UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WAYNE REYNOLDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00541-JMS-MJD |
| | ) | |
| JAMES DIGIACOMO, | ) | |
| KIMBERLY HOBSON, | ) | |
| BARBARA RIGGS, | ) | |
| CYNTHIA YORK, | ) | |
| RICHARD BROWN, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MEDICAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Wayne Reynolds, who at all relevant times was incarcerated at Wabash Valley Correctional Facility ("WVCF"), brought this action pursuant to 42 U.S.C. § 1983 against defendants Health Service Administrator ("HSA") Kimberly Hobson, Nurse Barbara Riggs, and Nurse Cynthia York (the "medical defendants") and Correctional Officer James Digiacomo and Warden Richard Brown (the "state defendants").

Mr. Reynolds alleges that the medical defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. The medical defendants now move for summary judgment on the merits of Mr. Reynolds' claims. Dkt. 73. Mr. Reynolds responded to the medical defendants' motion on March 17, 2020. Dkt. 85. The medical defendants replied on March 31, 2020. Dkt. 86. Mr. Reynolds filed a surreply on April 14, 2020. Dkt. 88.

For the reasons explained, the medical defendants' motion for summary judgment, dkt. [73], is **granted.**

## I. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

## II. Factual Background

At all times relevant to his claims in this case, Mr. Reynolds was an inmate at WVCF. Dkt. 75-1 at 7. Mr. Reynolds has worked as a machine operator for the past four years at WVCF, in which he runs garment and punch machines five to seven days a week, six to eight hours a day. *Id.* at 17-18. Kimberly Hobson is a Registered Nurse licensed to practice in the State of Indiana and is currently employed as the HSA at WVCF by Wexford of Indiana, LLC ("Wexford"). Dkt. 75-3, ¶¶ 1,5. Barbara Riggs is a Registered Nurse licensed to practice in the State of Indiana, currently employed as a Registered Nurse at WVCF by Wexford. Dkt. 75-2 at ¶¶ 1,5. Cynthia York is a Registered Nurse licensed to practice in the State of Indiana, currently employed as a Registered Nurse at WVCF by Wexford. Dkt 75-4 at ¶¶ 1,5.

In his complaint[1] filed on December 14, 2018, Mr. Reynolds alleged that on the morning of October 1, 2018, he fell in his cell, could not move, and had no feeling from the waist down. Dkt. 2 at 3. Mr. Reynolds alleges that he pushed the emergency call button to request medical assistance, and he experienced a delay in treatment when HSA Hobson and Nurse Riggs did not arrive until an hour later. Dkt. 7 at 2. On the evening of October 1, 2018, Mr. Reynolds alleges that he was suffering from pain and that Nurse York would not respond to him by coming to his cell house. *Id.* at 2-3. The Court screened Mr. Reynolds' complaint on December 21, 2018, and Mr. Reynolds' Eighth Amendment deliberate indifference claims against HSA Hobson, Nurse Riggs, and Nurse York were allowed to proceed. *Id.* at 4.

Mr. Reynolds testified that he injured his back while playing basketball "like a night or two before the 1st[.]" Dkt. 75-1 at 32. On the day of the incident, Nurse Riggs stated that she was notified by the custody staff that Mr. Reynolds needed medical attention due to a fall in his cell. Dkt. 75-2, ¶ 8. Nurse Riggs stated that she notified HSA Hobson that she was responding to the situation and that HSA Hobson accompanied her to Mr. Reynolds' cell. *Id.* Ms. Riggs and Ms. Hobson stated that no "immediate medical emergency" signal 3000 was called by custody at this time, but that they responded by taking a gurney to Mr. Reynolds' cell. *Id.*, dkt. 75-3, ¶ 8. Ms. Riggs and Ms. Hobson stated that upon their arrival at Mr. Reynolds' cell, he "was yelling and screaming[.]" dkt. 75-2, ¶ 9; 75-3, ¶ 9. When trying to calm Mr. Reynolds down and ask him questions about his medical state, Ms. Riggs and Ms. Hobson stated "his demeanor was argumentative and hostile . . . which made any medical assessment or intervention impossible, and

---

[1] The Court notes that Mr. Reynolds moved to file an amended complaint on February 29, 2019, which was granted, and this amended complaint added state defendant Warden Richard Brown. Dkt. 27; dkt. 35 at 1. The Court screened the amended complaint acknowledging that it "restates the same allegations raised in the original complaint," therefore, the Eighth Amendment claims in the original complaint against the medical defendants continued to proceed. Dkt. 35. at 1-2.

because his injuries did not appear to be in any way life threatening, it was decided for safety and security reasons to allow custody to secure Mr. Reynolds before any medical intervention could be attempted." Dkt. 75-2, ¶ 10, dkt. 75-3, ¶ 10. Mr. Reynolds admitted that HSA Hobson and Nurse Riggs responded to the incident by arriving at his cell. Dkt. 75-1 at 27-28. In his deposition, Mr. Reynolds admitted that he was "irate" with HSA Hobson and "had a lot to say to her" and "cursed her out." *Id.* Further, Mr. Reynolds admitted that Nurse Riggs did check on him while he was in his cell and asked him questions about his back. *Id.* at 56.

Mr. Reynolds was then secured to a back board by custody and transferred to the first floor of the range, was then placed on a gurney, and was taken to an examination room in the healthcare unit. *Id.* at 56-57; dkt. 75-2, ¶¶ 10-11; dkt. 75-3, ¶¶ 10-11. Mr. Reynolds admitted during his deposition that he did not remember what time he arrived in the examination room. Dkt. 75-1 at 58. He also testified that he believed that Nurse Riggs checked on him one time while he was waiting to be seen by Dr. Byrd. *Id.* Mr. Reynolds was treated by Dr. Byrd, who conducted an examination, took vitals, ordered labs, and concluded that Mr. Reynolds did not break his hip. *Id.* at 59. Dr. Byrd diagnosed Mr. Reynolds with a muscular strain and administered two injections and prescription medication, which Mr. Reynolds testified helped the pain until that evening when it wore off. *Id.* at 66-67.

Mr. Reynolds testified that when the pain medication wore off later that evening, he walked out of his cell and down the stairs to the guard's station to request assistance. *Id.* at 68. Mr. Reynolds stated Nurse York refused to see him and said he would need to put in a healthcare request. *Id.* at 69. Nurse York was the night nurse in the infirmary at WVCF on the evening of October 1, 2018, and she stated she received a phone call from custody at 9 p.m. that evening informing her of Mr. Reynolds' request for medical attention. Dkt. 75-4, ¶¶ 8-9. Nurse York

4

reviewed his medical records and "saw that Mr. Reynolds has received immediate Toradol by Dr. Samuel Byrd upon his arrival in the infirmary earlier that day. Dr. Byrd also ordered X-rays for the next day, another Toradol injection was given to Mr. Reynolds['] back." *Id.*, ¶ 10. Mr. Reynolds' food was to be brought to him for 10 days, he was to receive Tylenol with Ibuprofen and Flexeril for 7 days, he was to receive a medical lay-in for 4 days, and he was to be transferred via wheelchair to receive his scheduled X-rays on October 2, 2018. *Id.*, ¶ 10. Because of Mr. Reynolds' "extensive treatment" plan, Nurse York advised him to fill out a healthcare request as protocol. *Id.*, ¶ 11.

After the incident, Mr. Reynolds returned to work in his position as a machine operator within a week or less. Dkt. 75-1 at 72-73 ("I'm almost sure it wasn't no two weeks, though . . . . Maybe a week, maybe days.).

### III. Discussion

Mr. Reynolds was a convicted prisoner at all relevant times. This means that the Eighth Amendment applies to his claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendants knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019); *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016); *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014).

The defendants do not dispute for purposes of summary judgment that Mr. Reynolds had a serious medical condition. Accordingly, the Court will consider only whether each defendant was deliberately indifferent to Mr. Reynolds' medical condition.

**1. HSA Hobson and Nurse Riggs**

HSA Hobson and Nurse Riggs argue that Mr. Reynolds received appropriate medical care on the date of the incident, October 1, 2018, and after. Dkt. 74 at 2. Ms. Hobson and Ms. Riggs responded as soon as notified of the incident, they brought a gurney with them, and once they arrived at Mr. Reynolds' cell, they attempted to assess his condition but were prevented from doing so due to his irate conduct. *Id.* Ultimately, Mr. Reynolds was taken to the infirmary by these defendants and treated by Dr. Byrd. *Id.*

Mr. Reynolds stated he sued HSA Hobson regarding this incident because she told him: "What kind of service was you expecting? You just a prisoner." Dkt. 75-1 at 19. Mr. Reynolds alleges that HSA Hobson and Nurse Riggs were deliberately indifferent to his medical needs because of their delayed response of approximately 1 hour from the time of his fall. However, in his deposition, Mr. Reynolds admitted that he was "never made aware" of when HSA Hobson and Nurse Riggs were told they needed to respond to him. Dkt. 75-1 at 74-75. Furthermore, it is undisputed that the officers did not declare a medical emergency code that would put these medical defendants on notice that there was an immediate need to respond to Mr. Reynolds' cell. *Id.* at 83; *see also* dkt. 75-5 at 2 (October 1, 2018 provider visit notes state that "[n]o signal 3000 was called, so length of response time likely a Custody issue.").

The medical records and other documents in the record indicate that Mr. Reynolds was being "argumentative" with HSA Hobson and Nurse Riggs when they arrived at his cell, and told them he would have their jobs and did not have to stop threatening them because "This is America."

6

Dkt. 75-5 at 9; dkt. 75-2, ¶ 10; dkt. 75-3, ¶ 10. The narrative in the medical records states that Mr. Reynolds was also told to stop being threatening by the LHU Sgt. at the scene. Dkt. 75-5 at 9. Mr. Reynolds admits multiple times in his testimony that he was "irate" with them. Dkt. 75-1 at 27-28, 45. HSA Hobson and Nurse Riggs contend that any delay in assessing or transporting Mr. Reynolds to the infirmary was a result of his own unsafe demeanor. The Court agrees. Mr. Reynolds' condition was determined to be non-life threatening, he was safely secured to a back board by custody, and was then met by the medical defendants to be promptly transported to the infirmary where he received medical treatment by Dr. Byrd – whose treatment has not been questioned and who is not a named defendant in this lawsuit.

The undisputed evidence shows that HSA Hobson and Nurse Riggs promptly treated Mr. Reynolds immediately after being notified that he fell in his cell. Mr. Reynolds has not shown that the defendants knew about his condition and the substantial risk of harm it posed but disregarded that risk. Moreover, the Court finds no evidence in the record that Mr. Reynolds has presented to show how the defendants' alleged response time of an hour or less resulted in harm to him. In fact, the Court finds that Mr. Reynolds has presented no evidence of the actual length of the defendants' response time.

"[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). These defendants responded to a non-emergency call, assisted by bringing a gurney to the scene, attempted to evaluate Mr. Reynolds' condition, ultimately transported him to the infirmary, and at least one of the defendants checked on him while he was awaiting examination by Dr. Byrd. The Court finds that the ease of providing treatment was further limited by Mr. Reynolds' admittedly

7

irate conduct. Mr. Reynolds was extensively treated for his fall and was back to work within a short period of time.

No reasonable fact-finder could conclude that HSA Hobson and Nurse Riggs were deliberately indifferent to Mr. Reynolds' injuries after his fall. Accordingly, they are entitled to summary judgment.

**2. Nurse York**

Nurse York argues that she was not deliberately indifferent to Mr. Reynolds' medical needs because he had just been evaluated by Dr. Byrd earlier in the day, no emergency signal was called that evening, and Mr. Reynolds had been given pain medication. Dkt. 74 at 2. Mr. Reynolds testified that he was in the infirmary "[a]ll day. I stayed there - - I stayed there until that evening." Dkt. 75-1 at 69. Mr. Reynolds' medical records reflect that he had received Toradol and Dexamethasone, he was instructed to take Ibuprofen, Flexeril had been ordered, a medical lay-in was requested for that day and three days following, and he was to be transported by wheelchair for X-rays ordered by Dr. Byrd the following day, "at which time we will follow up with him." Dkt. 75-5 at 4. Dr. Byrd only specifically notified Nurse York of a possible need for routine Glucose checks due to corticosteroids being given, which was not the subject of Mr. Reynolds' complaint that evening. *Id.*

Mr. Reynolds testified to walking to the guard's station that evening to report that his pain medication had worn off. Dkt. 75-1 at 68. He did not report that his circumstances had significantly changed from a few hours earlier when examined by Dr. Byrd. Nurse York stated she "reviewed the extensive treatment Mr. Reynolds had received earlier in the day" and the treatment plan for the following few days and advised that Mr. Reynolds should put in a healthcare request form, per protocol. Dkt. 75-4, ¶ 11. Mr. Reynolds has not established that Nurse York disregarded a

8

substantial risk of harm posed by his condition. Deliberate indifference in this context is "something akin to recklessness." *Arnett*, 658 F.3d at 751. Furthermore, though Mr. Reynolds may have experienced some discomfort on the first evening following the incident, inmates are "not entitled to demand specific care;" rather they are "entitled to reasonable measures to meet a substantial risk of serious harm." *Id.* at 754. Nurse York took reasonable measures in her review of Mr. Reynolds' medical record and the treatment that had already been given, including injections and pain medication that had been administered to Mr. Reynolds just hours before he was discharged from the infirmary and later walked to the guard's station to seek more medical attention. Nurse York additionally reviewed the follow-up treatment plan for X-rays the next day. Anything in addition to this comprehensive treatment plan would reasonably need to be reviewed in the form of a healthcare request and a presumable consult with Dr. Byrd or another physician.

No reasonable fact-finder could conclude that Nurse York was deliberately indifferent to Mr. Reynolds' injuries after his fall. Accordingly, Nurse York is entitled to summary judgment.

### IV. Conclusion

For the reasons discussed above, the medical defendants' motion for summary judgment, dkt. [73], is **granted**. A partial final judgment will not issue at this time.

The claims against state defendants Correctional Officer James Digiacomo and Warden Richard Brown remain pending because they did not seek summary judgment. Those claims will be resolved either through settlement or trial.

The Magistrate Judge is requested to set this matter for a status conference to determine how the remaining claims will be resolved.

**IT IS SO ORDERED.**

Date: 9/16/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

WAYNE REYNOLDS
880584
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Michael J. Blinn
INDIANA ATTORNEY GENERAL
michael.blinn@atg.in.gov

David C. Dickmeyer
INDIANA ATTORNEY GENERAL
David.Dickmeyer@atg.in.gov

Magistrate Judge Mark J. Dinsmore